EBEL, Circuit Judge,
dissenting.
Prior to the events giving rise to this case, Petitioner Sharieff Imani Sallahdin appears to have been a law-abiding man who had enjoyed a normal upbringing, had achieved some academic and athletic success, and was generally regarded as a good soldier. He also was a serious body-builder who, as he became ever more engrossed in his weight-lifting regimen, began to use steroids heavily. In the pre-dawn hours of October 21, 1991, Sallahdin entered a convenience store in Lawton, Oklahoma and shot and killed a clerk while attempting to rob the store. In general terms, the issue before us centers on whether Sallahdin’s counsel was constitutionally ineffective in failing to call Dr. Pope as a witness in the penalty phase of the trial to testify that Sallahdin’s previous steroid use could have explained the uncharacteristic act of violence resulting in the convenience store shooting.
In our previous ruling in this case, this panel unanimously held that “there is a reasonable probability that the presentation of Dr. Pope’s testimony [explaining how Sallahdin’s steroid use could have triggered his apparent transformation from non-violent and law-abiding citizen to cold-blooded murderer], could have altered the outcome of the sentencing phase.” Sallahdin v. Gibson (Sallahdin I), 275 F.3d 1211, 1240 (10th Cir.2002). Although we remanded for an “evidentiary hearing on the issue of trial counsel’s performance” id., I believe our prior opinion concluded that the prejudicial effect of counsel’s refusal to call Dr. Pope would lead to a conclusion that counsel’s performance was constitutionally defective unless the more deferential standard utilized to evaluate actual strategic choices by counsel was employed. Thus, in our remand we instructed the district court that, “If trial counsel made a strategic decision not to use Dr. Pope’s testimony, the district court will then need to assess whether that was a constitutionally reasonable decision under the circumstances. If, however, it is established that trial counsel was neglectful, or otherwise erred, in failing to call Dr. Pope as a second stage witness, then trial counsel’s performance cannot be deemed constitutionally reasonable [and] Sallahdin would be entitled to federal ha-beas relief ...” Id. (Emphasis added.) The district court held such a hearing, and concluded that there was no evidence in the record that Sallahdin’s counsel made a conscious strategic choice not to call Dr. Pope, and that counsel’s performance was constitutionally deficient. Notwithstanding these findings by the district court, a *1253 majority of our panel now reverses the grant of habeas relief. I must respectfully dissent.
As the majority correctly notes, Strickland v. Washington instructs us to “indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” 466 U.S. at 689, 104 S.Ct. 2052. While this presumption can be rebutted by the defendant’s showing “that counsel’s , representation fell below an objective standard of reasonableness,” Id. at 688, 104 S.Ct. 2052, the bar is set very high. An attorney’s performance will not fall short of this baseline if we conclude his or her actions are consistent with any possible strategy that would have been objectively sound under the circumstances of the case.
It is critical to remember, however, that our focus at this point is on an objective analysis, and not on subjective thought processes. Thus we held in Bullock v. Carver that defense counsel’s failure to object to hearsay evidence was not objectively unreasonable, even though the defendant’s counsel subjectively was unaware that the evidence could have been excluded under state law, because a hypothetical “fully informed attorney could have concluded that admitting the hearsay statement was to [the defendant’s] strategic advantage.” 297 F.3d 1036, 1053-54 (10th Cir.2002). That the particular attorney in that case never followed that line of thought was immaterial to our conclusion that his actions had been objectively reasonable. Similarly, in Bonin v. Calderon, 59 F.3d 815, 838 (9th Cir.1995), the Ninth Circuit rejected an ineffective assistance claim brought by a defendant who claimed his counsel had abused drugs during trial, finding the accusation to be irrelevant where the attorney’s performance at trial had not been objectively unreasonable. See also Chandler v. United States, 218 F.3d 1305, 1315 and n. 16 (11th Cir.2000) (en banc) (“[T]o show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.... We look at the acts or omissions of counsel that the petitioner alleges are unreasonable- and ask whether some reasonable lawyer could have conducted the trial in that manner. Because the standard is an objective one, that trial counsel ... admits that his performance was deficient matters little.”)
A successful showing by the defendant that no reasonable strategy can explain or justify his lawyer’s conduct does not, however, end our inquiry in all cases. When counsel seeks to justify his or her behavior on the basis of an actual subjective strategy, we give an extra bump to the presumption of reasonableness. That is,- if the lawyer in fact-pursued an actual informed legal strategy, it will be even more likely that-we will find the approach to be objectively reasonable than if the approach taken was random or reflexive conduct without strategic thought behind it. Bullock v. Carver, 297 F.3d at 1046; Moore v. Marr, 254 F.3d 1235, 1239 (10th Cir.2001).
As we, stated recently in our en banc decision in Bryan v. Mullin, “although the ultimate question is always whether counsel’s performance fell below an objective standard of reasonableness, ‘where it is shown that a challenged action was, in fact, an adequately informed strategic choice, we heighten our presumption of objective reasonableness and presume that the attorney’s decision is nearly unchallengeable.’ ” 335 F.3d 1207, 1223 n. 23 (quoting Bullock v. Carver, 297 F.3d at 1047, 1051). An attorney who is shown to have made a conscious strategic choice will only be found constitutionally incompetent where the strategy pursued was “completely unreasonable, not merely wrong.” Bullock, 297 F.3d at 1047. In Bullock, we summa *1254 rized the legal framework of the interaction between objective reasonableness and subjective strategy as follows:
[T]he overriding question under the first prong of Strickland is whether, under all the circumstances, counsel performed in an objectively unreasonable manner. Two presumptions inform our objective reasonableness inquiry. First, we always start the analysis [with the presumption] that an attorney acted in an objectively reasonable manner and that an attorney’s challenged conduct might have been part of a sound trial strategy. Second, where it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney’s decision was objectively reasonable becomes “virtually unchallengeable.” However, it is important to remember that these presumptions are simply tools that assist us in analyzing Strickland’s deficient performance prong and they do not, in and of themselves, answer the ultimate question, which is whether counsel performed in an objectively reasonable manner. So, for example, even though counsel’s strategy was ill-informed and thus does not qualify for the virtually unchallengeable presumption of reasonableness, a court reviewing the record before it might still conclude that counsel performed in an objectively reasonable manner. And, conversely, it is also possible on rare occasions to conclude that counsel’s fully-informed strategic choices were unreasonable if “ ‘the choice was so patently unreasonable that no competent attorney would have made it.’ ” Phoenix v. Matesanz, 233 F.3d 77, 82 n. 2 (1st Cir.2000) (quoting Washington v. Strickland, 693 F.2d 1243, 1254 (5th Cir.1982)).
297 F.3d at 1046.
Whether or not counsel actually relied on an identified strategy is a factual question, not predicated on any legal presumptions about hypothetical or potential strategies. Bryan, 335 F.3d at 1221 n. 17. Only if the evidence reveals that counsel was in fact pursuing an informed strategic approach do we then apply the even higher presumption such that the reasonableness of counsel’s performance becomes “virtually unchallengeable” unless it is “completely unreasonable.” If the record does not establish an informed strategy behind the challenged action, then the court must rely on the normal Strickland presumption of competent counsel, which can be rebutted by the defendant showing that there is no reasonable basis for taking that particular action.
Our remand made it clear that if Sallahdin’s counsel’s decision not to call Dr. Pope was evaluated without the support of an actual informed strategy, “then counsel’s performance cannot be deemed constitutionally reasonable.” But if the decision not to call Dr. Pope was the result of an actual informed strategy, then the extra bump that we give to the presumption of reasonableness might allow the district court to conclude that the decision was constitutionally sufficient. Thus, it became critical on remand for the district court to determine whether the decision not to call Dr. Pope was an informed strategic decision or not. We stated, “The purpose of the evidentiary hearing will be to determine trial counsel’s reasons, or lack thereof, for foregoing the use of Dr. Pope’s testimony during the sentencing phase.”
The district court on remand concluded that there was no evidence that the decision not to call Dr. Pope was the result of an informed strategy. Unless that finding is to be set aside as clearly erroneous, we are left with the ordinary Strickland presumption of competence to apply. I believe our prior opinion has already determined, as the rule of the case, that such a *1255 presumption of competence has been rebutted on this issue. If, on the other hand, the majority is correct that that issue was not decided in our prior opinion, I would now decide it, contrary to the majority opinion, by holding that the decision not to call Dr. Pope was unreasonable and constituted ineffective assistance of counsel.
At the close of the evidentiary hearing on remand, the district court ruled out several possible reasons that might have motivated Barrett’s choice not to call Dr. Pope. According to the district court, the state trial record indicated that Barrett was not prevented from calling Dr. Pope during the penalty phase by any court order excluding Dr. Pope’s testimony. Nor did the state court record support the theory that Dr. Pope’s absence was the result of financial or time constraints; Barrett had received authorization for Dr. Pope’s expenses and fees four days before the start of Sallahdin’s trial, and Dr. Pope was aware that he might be called on short notice. Finally, the district court found that the evidence presented on remand also ruled out the government’s preferred theory — that Barrett had decided to abandon all mention of steroids at sentencing after being confronted with evidence that Sallahdin might have ceased his steroid use several months before committing the murder.
The district court’s ultimate factual conclusion was stated quite plainly: “There has been no evidence presented that supports the conclusion that trial strategy was the basis for failing to proffer Dr. Pope[ ] as a witness during sentencing.... This evidence establishes that there is no discernible explanation for counsel’s failure to call Dr. Pope to the stand on Petitioner’s behalf.”
“The question of whether an attorney’s actions were actually the product of a tactical or strategic decision is an issue of fact.” Bryan v. Mullin, 335 F.3d 1207, 1221 n. 17 (10th Cir.2003) (en banc). Although we may disagree with the district court’s factual conclusions, we may overrule them only if we find the district court committed clear error. Id. at 1216; Rogers v. Gibson, 173 F.3d 1278, 1282 (10th Cir.1999). We may find clear error only if our review of all the evidence leaves us with a “definite and firm conviction that a mistake has been committed.” Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Our deference for the conclusions of the district court is Especially heightened where the lower court’s judgment rests on an evaluation of witnesses’ credibility. Id. at 575, 105 S.Ct. 1504.
Barrett’s testimony below was frequently vague and often marred by his failing memory. Where, however, the government’s completely circumstantial evidence that Barrett had made a conscious strategic decision not to present Dr. Pope’s testimony was countered by Barrett’s specific disavowals as well as documentary evidence in the record, we simply cannot fairly say that the district court’s fact finding on this point was clearly erroneous.
Thus, the finding on remand that there was no showing of an actual informed strategy not to call Dr. Pope must stand. Therefore, we are directed back to the ordinary Strickland rebuttable presumption of competence.
As I have stated previously, I believe this panel’s unanimous opinion in Sallahdin I has already settled the objective reasonableness issue, and law of the case counsel against altering our judgment now. However, even if we were to revisit that previous holding, I would again conclude that Barrett’s failure to put Dr. Pope on the stand was objectively unreasonable.
Although our prior opinion in Sallahdin I does speculate that “we cannot say that *1256 presentation of a steroid-use defense was without risk of negative consequences, or was the only reasonable second-stage strategy that trial counsel could have adopted,” Sallahdin I, 275 F.3d at 1240, and footnote 10 specifically mentioned a “residual doubt” strategy as a possibility that might have been largely consistent with the mitigation evidence actually presented in the sentencing proceeding, Id. at 1240 n. 10, I believe this discussion was only in the context of leaving open on remand the possibility that if the district court found that Barrett had relied on a specific conscious strategy, it might then conclude that such a strategy was not “completely unreasonable.”[1] Our mention of “residual doubt” as a potentially reasonable second-stage strategy is immediately followed by the declaration that “[i]t is imperative to determine trial counsel’s reasons, or lack thereof,” for foregoing the use of Dr. Pope’s testimony. Id. at 1240. Both of these statements, and indeed the entire discussion of counsel’s reasons for his decision, focus on the subjective state of mind of Sallahdin’s trial counsel. Since the district court did not find that Barrett had an informed strategic reason for not calling Dr. Pope, neither it nor we reach the issue of whether any such subjective strategy might have been completely unreasonable.
If, as the majority now holds, the objective reasonableness of Barrett’s actions is again before us on this appeal, I would again conclude that Sallahdin has overcome Strickland’s presumption of objective reasonableness.
As we noted in our prior opinion, there were strong reasons to present Dr. Pope’s testimony in the sentencing phase of Sal-lahdin’s trial. In contrast to the vague character evidence offered by Sallahdin’s friends and relatives, Dr. Pope’s testimony “regarding the potential of steroid use to cause severe personality changes in the user could have explained how Sallahdin could have been transformed from an allegedly mild-mannered, law-abiding individual into a person capable of committing the brutal murder with which he was found guilty.” Sallahdin I, 275 F.3d at 1239. The record on remand indicates that Dr. Pope’s testimony would also have corroborated Sallahdin’s claims both regarding the timing of his last steroid use and regarding his severe withdrawal effects.
All of the reasons that a competent lawyer might have relied upon in deciding not to call Dr. Pope to the stand are either inapplicable to the facts of this case or are objectively unreasonable in the context of those same facts. Lack of funding to cover Dr. Pope’s expenses or Dr. Pope’s unavailability on short notice might have provided a reasonable justification for not calling him to the stand, but the district court ruled out both these possibilities, and those factual findings are not clearly erroneous.
The majority’s first preferred justification- — that the jury might have viewed Sallahdin’s steroid use in a negative light— does not qualify as a reasonable justification for Barrett’s actions. The fact that the jury returned a guilty verdict after a mere 52 minutes of deliberation indicates to a reasonable lawyer that the jurors already had a significantly negative impression of Sallahdin. Adding the fact that the defendant was a long-term user of illegal steroids could hardly, by itself, have lowered him in their eyes. That Sal-lahdin’s steroid use was illegal and that his past experience with the side-effects *1257 might have made his continued steroid use reckless may weaken, but does not eliminate, the potential redemptive effect that steroid evidence could have had. The central premise of the majority’s proposal— that a reasonable lawyer might have thought Sallahdin’s chances of avoiding the death penalty might have been better when he appeared merely to be an intrinsically dangerous random murderer than if he were presented to the jury as a drug-user whose illegal (and now terminated) steroid habit provoked an unanticipated and episodic trigger for his sudden violence — contorts the concept of “reasonableness” beyond recognition.
Neither of the majority’s second or third alternatives — that Sallahdin’s credibility problems might have undercut his steroid withdrawal claims, or that the prosecution’s rebuttal testimony regarding the timing of Sallahdin’s last steroid dose would have called into question the force of his withdrawal claims — are objectively reasonable bases for excluding Dr. Pope. The impact of Dr. Pope’s scientific conclusions might well have been weakened by the jurors’ skepticism toward Sallahdin,[2] but even a weakened mitigation argument would have been better than none at all. What is more, the record below indicates that Dr. Pope would have actually corroborated Sallahdin’s claims both as to when he last took steroids and as to his symptoms during withdrawal. In any event, Sallah-din’s steroid use could have been put into evidence by other witnesses, and the importance of that use could have been explained by Dr. Pope, avoiding entirely the need to call Sallahdin at the penalty phase or to require him directly to contradict his own testimony from the guilt phase of the trial.
Our opinion in Sallahdin I mentioned the possibility that Barrett’s actions might have been driven by a residual doubt strategy.[3] The circumstances of the trial show, however, that such an approach would not have been objectively reasonable. Although Sallahdin had taken the stand during the guilt phase to claim he was innocent, the jury returned its guilty verdict after deliberating for less than an hour, and all indications in the record are that the prosecution’s evidence of guilt was overwhelming. Residual doubt, under such circumstances, was not a plausible tactic to justify Barrett’s exclusion of what might have been Sallahdin’s strongest mitigation evidence. Further, a steroid defense that could have been presented without the need to call Sallahdin at the penalty phase would not have necessarily been inconsistent with a reasonable doubt strategy as it could have been presented as an alternative basis for avoiding the death penalty. That is, if the jury retained reasonable doubt it should give Sallahdin life imprisonment and even if they did not harbor residual doubt they should still consider life imprisonment because steroid withdrawal would have caused the murder to be atypical and not likely of repetition.
In sum, I see no objectively reasonable justification for excluding Dr. Pope’s testimony from the sentencing phase of Sallah-din’s trial. We have previously concluded that the exclusion of this testimony was prejudicial. Therefore, I conclude that Barrett’s performance as defense counsel was constitutionally deficient, and that his *1258 habeas petitions should be granted as to the punishment stage of the trial.
CONCLUSION
I would affirm the district court’s conclusion that there was no evidence of an informed strategic strategy not to call Dr. Pope, and I would reaffirm, if necessary, the prior judgment of this court in Sallah-din I that the decision not to call Dr. Pope was not objectively reasonable. I respectfully dissent and would affirm the district court’s grant of habeas corpus here requiring that Sallahdin be given a new penalty phase trial.

. Even conduct taken pursuant to an actual informed strategy can result in ineffective assistance of counsel if such conduct is "completely unreasonable.” Bullock v. Carver, 297 F.3d at 1047.

. Sallahdin's credibility before the jury could not have been very good, given the speed with which they convicted him in the face of his claims of innocence during the guilt phase.

. In his testimony before the district court, Barrett squarely denied adopting a residual doubt strategy. For the purposes of our objective reasonableness analysis, however, whether or not Barrett actually relied on such a strategy is not dispositive.